**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENE PALERMO,<br><br>                              Plaintiff,<br>     vs.<br>UNDERGROUND SOLUTIONS, INC.,<br><br>                              Defendant. | CASE NO. 12cv1223 WQH (BLM)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Motion for Preliminary and Permanent Injunctive Relief (ECF No. 3) filed by Plaintiff Gene Palermo.

**I.    Background**

On May 21, 2012, Plaintiff Gene Palermo initiated this case by filing the Complaint. Plaintiff alleges that he is an "internationally recognized expert" regarding "the plastic piping industry" who "has become a champion for certain types of piping, including high density polyethylene ('HDPE') piping and polyvinyl chloride ('PVC')." (ECF No. 1 at ¶¶ 1, 6-7). Plaintiff alleges that he has "published a number of papers and given dozens of presentations highlighting the risks associated with using fused PVC on account of its vulnerability to a phenomenon known as rapid crack propagation." *Id*. at ¶ 8. Plaintiff alleges that Defendant Underground Solutions, Inc. "specializes in the use of [fused PVC and] ... sells fused PVC throughout the United States." *Id*. at ¶ 2.

Plaintiff alleges that he became aware of a website with the domain name of www.gene

palermo.com which "associates [Plaintiff's] name with written content and photographs that purport to show the 'facts' about HDPE piping." *Id*. at ¶ 11. Plaintiff alleges that the "website asserts that HDPE piping is dangerous to use, highly fragile, and prohibitively expensive to fix." *Id*.

Plaintiff alleges that the "content of this website is completely inimical to the views that Dr. Palermo maintains and has publicly espoused throughout his career." *Id*. Plaintiff alleges that "[t]he www.genepalermo.com website is calculated to confuse web visitors, who are looking for Dr. Palermo's work, and to capitalize off of his reputation and name in order to show the visitor web content that is contrary to Gene Palermo's own views." *Id*. at ¶ 12.

Plaintiff alleges that Defendant also "created and circulated a pamphlet [titled 'Palermo's Negative Sales, Scare Campaign Revealed'] ... in which Plaintiff is described as 'an unqualified shill' for the HDPE industry and as someone who has 'no independent credibility' and whose professional presentation is 'mere propaganda.'" *Id*.

Plaintiff asserts the following claims: (1) a federal claim for false designation of origin and false association under the Lanham Act, 15 U.S.C. § 1125(a); (2) state claims for false light, and misappropriation of likeness regarding the website www.genepalermo.com; for defamation regarding the statements made in the pamphlet; and for unfair competition under California Business and Professions Code section 17200 regarding both the website www.genepalermo.com and the statements made in the pamphlet.

On May 21, 2012, Plaintiff filed a Motion for Preliminary and Permanent Injunctive Relief. (ECF No. 3). Plaintiff seeks a preliminary and permanent injunction as follows:

>  (1) Grant preliminary and permanent injunctive relief against [Defendant] ... from:
>
>  (a) using Dr. Gene Palermo's name, or any similar terms, in a manner likely to cause confusion therewith, in connection with the advertising, marketing, distribution, sale or offer for sale of any goods or services;
>
>  (b) maintaining any website or domain name, including but not limited to www.genepalermo.com, that misleadingly implies that Gene Palermo has any association with Defendant or with any of the opinions contained on www.genepalermo.com; and
>
>  (c) disseminating and/or distributing the pamphlet

        entitled "Palermo's Negative Sales, Scare Campaign Revealed" to anyone or any entity.

        (2)    Include a provision in the injunction order directing [Defendant] to file with the Court and serve upon Dr. Palermo within thirty (30) days after this injunction is served upon [Defendant] a written report, certified under oath, setting forth the manner and form in which [Defendant] has complied with this injunction.

        (3)    Include a provision in the injunction ordering [Defendant] to deliver by mail or email a copy of the preliminary injunction order to its officers, agents, servants, employees, successors and assigns within five (5) business days from the date of the order.

(ECF No. 3 at 2).

## II.    Applicable Law

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). The party seeking preliminary injunctive relief has the burden to show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see also Small v. Avanti Health Systems, LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) ("*Winter* overturned ... precedents that allowed district courts to grant injunctions when a plaintiff demonstrated ... only a possibility of irreparable harm[]" finding that the "possibility" standard is "too lenient").

The Court of Appeals for the Ninth Circuit has articulated a standard "under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). The test applies a sliding scale approach to a preliminary injunction in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*; *see also Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011) (holding that the sliding scale approach to preliminary injunctions continues to be viable after *Winter* "so long as a certain threshold

showing is made on each [*Winter*] factor.").

## III. Likelihood of Success on the Merits

### A. Federal Claim of False Designation of Origin and False Association Regarding the Website www.genepalermo.com

Plaintiff contends that Defendant "has falsely designated Dr. Palermo as the author, creator and owner of the website and is passing off its own beliefs about HDPE piping as Dr. Palermo's beliefs." (ECF No. 3-1 at 14). Plaintiff contends that he has commercial interest in his identity as an expert in the piping industry and that Defendant has created a "false association" between Dr. Palermo and the "'facts' about HDPE piping" on the website which is likely to confuse customers. *Id*. at 15.

Defendant contends that its use of Plaintiff's name is not commercial. Defendant contends that the website www.genepalermo.com does not offer any product or service for sale, does not contain any advertisements, and does not identify any person or entity with which to do business.

The Lanham Act, 15 U.S.C. § 1125, regarding false designations of origin and false association provides:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). The Lanham Act also protects against use of "voices, uniforms, likenesses, published words, or names ... in such a way as to deceive the public into believing that they endorsed, sponsored, or approved of the defendant's product." *Advanced Resources Intern., Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 334 (4th Cir. 1993) (citing *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1107 (9th Cir. 1992)); *see also Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 679-80 (9th Cir. 2005) (holding that the Lanham Act was "expressly enacted to be applied in commercial contexts [and it] does not prohibit all unauthorized uses

of a trademark.").

The purpose of the Lanham Act is "'to protect the ability of consumers to distinguish among competing producers.'" *Bosley*, 403 F.3d at 676 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)). "[T]he Act is designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark and to allow the mark holder to distinguish his product from that of his rivals." *Id.* (citation omitted).

Generally, a court considers all of the circumstances surrounding the alleged Lanham Act violation to determine whether the use is commercial. *See Bosley*, 403 F.3d at 675, 678 (considering whether the defendant earns revenue from the website, whether the website offers good or services for sale, whether the website links to any of Plaintiff's competitors, and whether the website contains advertising); *see also Utah Lighthouse Ministry v. Found. for Apologetic & Research,* 527 F.3d 1045, 1052 (10th Cir. 2008) (holding that a court should make a "fact-sensitive, case-by-case assessment" to determine whether a website is commercial).

The First Amendment does not protect speech which violates the Lanham Act. *See Bosley*, 403 at 677 (holding that the First amendment does not protect "a competitor who labels its commercial good with a confusingly similar mark ....") (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) ("Whatever first amendment rights [a defendant] may have in calling the brew [it] makes in [its] bathtub 'Pepsi' are easily outweighed by the buyer's interest in not being fooled into buying it.")).

The website www.genepalermo.com, titled "Plastic Pipe Facts," states in pertinent part:

> High Density Polyethylene (HDPE) Pipe is used in water and sewer pipe installations across the United States. The pipe system is typically joined by thermal fusion or "welding" through the use of "butt-welding" equipment or "electro-fusion" saddles that are often used in trench to connect HDPE pipe segments. The American Water Works Association publishes standards for HDPE pipe used in water mains and transmission lines (AWWA C906) and in service lines (AWWA C901). However, the common HDPE pipe failure modes are not addressed in HDPE pipe manufacturer literature or the reference pipe standards. Listed below are some examples of HDPE pipe failure modes that are frequently encountered in the field. These issues should be considered and addressed proactively in the pipe material selection

process, the subsequent design and construction process.

(ECF No. 1-2 at 2). The website contains fourteen links to descriptions of HDPE pipe failures.

In this case, Plaintiff does not manufacture or sell HDPE pipe. Plaintiff is an expert in the plastic piping industry and advocates the use of HDPE pipe. Defendant Underground Solutions, Inc. sells fusible PVC which is a type of plastic piping that competes with HDPE pipe. *See* Decl. Ables ECF No. 14-1 at 2 ¶ 2. Robert Walker, Defendant's vice president of engineering applications, submitted a declaration stating: "Because Fusible PVC pipe can often be used in the same water and wastewater systems that allow HDPE pipe, the products are frequently specified as alternates for the same project." (ECF No. 14-2 at 2 ¶ 2). Walker states: "Performance Pipe, a division of Chevron Phillips Chemical Company LP, is [Defendant's] primary competitor in the marketing of plastic pipe for underground trenchless-installed pipelines." *Id.* at ¶ 3. Defendant asserts that Performance Pipe pays Plaintiff to endorse the use of HDPE pipe. Defendant has submitted a transcript of the deposition of Gene Palermo, taken in a separate action, in which Palermo states: "it's pretty obvious I have a relationship with Performance Pipe. I have a consulting agreement with them. I do work for them." (ECF No. 14-1 at 47-48).

The website www.genepalermo.com contains information and language negative to the use of HDPE pipe. There is no evidence that Defendant earns revenue from the website. The website does not refer to Defendant, fusible PVC, or any product sold by Defendant. The website does not lists any products for sale, does not include links to any websites that offer Defendant's products for sale, does not include links to any of Plaintiff's competitors, does not solicit information from visitors, and does not contain advertising. The Court finds that the facts in the record are not sufficient to show that a visitor to the website would believe that Gene Palermo originated, sponsored, or approved Defendant's product, fusible PVC. *See* 15 U.S.C. § 1125(a)(1)(A). At this stage in the case, Plaintiff has not shown a likelihood of success on the merits. Plaintiff has not met his burden of showing that he is entitled to the "extraordinary and drastic remedy" of a preliminary injunction. *See Mazurek*, 520 U.S. at

972.[1]

### B. State Claim for Misappropriation of Likeness Regarding the Website www.genepalermo.com

Plaintiff contends that the website has a commercial purpose. Plaintiff asserts that the website is intended to dissuade customers from purchasing HDPE pipe and to purchase fused PVC. Defendant contends that its use of Plaintiff's name was noncommercial; accordingly, there is no commercial purpose.

California Civil Code section 3344 regarding use of another's name, voice, signature, photograph, or likeness for advertising or selling or soliciting purposes provides:

> Any person who knowingly uses another's ... likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a). "To sustain a [claim for violation of California Civil Code section 3344], a plaintiff must prove: (1) the defendant's [knowing] use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage...; (3) lack of consent; ... (4) resulting injury ... [and (5)] a direct connection between the alleged use and the commercial purpose." *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1001 (9th Cir. 2001) (citations omitted).

As discussed above, Plaintiff has failed to show that the website was commercial. At this stage in the case, Plaintiff has failed to show a "direct connection" between the website www.genepalermo.com and a commercial purpose by Defendant. *See Downing,* 265 F.3d at 1001. Plaintiff has failed to show that he is likely to succeed on the merits of his claim of a violation of California Civil Code section 3344. Plaintiff has not met his burden of showing that he is entitled to the "extraordinary and drastic remedy" of a preliminary injunction. *See Mazurek*, 520 U.S. at 972.

### C. State Claim of Unfair Competition Law Regarding the Website www.genepalermo.com

---

[1] Plaintiff did not move for a preliminary injunction pursuant to his claim that the website casts him in a false light. Accordingly, the Court does not address whether Plaintiff is likely to succeed on his claim that the website casts him in a false light.

Plaintiff contends that Defendant has engaged in unfair business practices on the grounds that "[t]he harm that results from [Defendant's] attempts to impugn Dr. Palermo's reputation, deceive the public, and, more importantly, the consumers of plastic pipe, far outweighs any benefits to [Defendant] for creating the website." (ECF No. 16 at 8). Plaintiff contends that Defendant has engaged in fraudulent business practices on the grounds that "[Defendant] has a duty to disclose truthful and accurate information to the public on a website that it created and that contains purported facts about [Defendant]'s own industry." (ECF No. 3-1 at 21). Plaintiff contends that "even if Dr. Palermo has not alleged concrete economic loss at this time, the court should not dismiss Dr. Palermo's claim under section 17200 ...." (ECF No. 16 at 8).

Defendant contends that Plaintiff lacks standing to bring any claim under the Unfair Competition law because Plaintiff has not shown he was injured. Defendant contends that Plaintiff's claim of unfair business practices fails on the grounds that Plaintiff, an advocate of HDPE pipe, and Defendant, a manufacturer and seller of fusible PVC, are not competitors and Plaintiff has "not offer[ed] evidence of significant, market-wide harm akin to an antitrust violation." (ECF No. 14 at 31). Defendant contends that Plaintiff's claim of fraudulent business practices fails on the grounds that Defendant does not have a duty to disclose any fact and Plaintiff has not shown that a reasonable consumer would be confused.

The Unfair Competition Law ("UCL") permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof. Code section 17200. Proposition 64 limits standing to sue under the UCL to those who have suffered an injury-in-fact as a result of the conduct which violated the UCL. *See Californians For Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 227 (Cal. 2006) ("After Proposition 64, ... a private person has standing to sue only if he or she has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.") (quotation omitted); *see also* Cal. Bus. & Prof. Code section 17204 (stating that an individual may sue "who has suffered injury in fact and has lost money or property as a result of the unfair competition."). A plaintiff must also show that the injury-in-fact was the

1  result of the defendant's violation of the UCL.  *See In re Tobacco II Cases*, 46 Cal. 4th 298,
2  326-27 (Cal. 2009).

3  Plaintiff has submitted his declaration which states:

> My credibility and reputation have suffered due to the content of the Website and the pamphlet and their exposure to individuals, plastic pipe manufacturers and purchasers in the industry. I have been contacted by numerous individuals in the industry questioning my abilities and work in the industry, and whether I authored and/or endorse the content on the Website and whether I am aligned with [Defendant]. I have had to reassure these individuals and the industry that my views on HDPE piping have not changed and that I have absolutely no connection with the Website.

9  (ECF No. 4-1 at 4).

10  At this stage in the case, Plaintiff has not offered any evidence of an injury.  The Court
11  finds that Plaintiff has not shown a likelihood of success on the merits.  Plaintiff has not met
12  his burden of showing that he is entitled to the "extraordinary and drastic remedy" of a
13  preliminary injunction.  *See Mazurek*, 520 U.S. at 972.

14  "When ... a party has not shown any chance of success on the merits, no further
15  determination of irreparable harm or balancing of hardships is necessary." *Global Horizons,*
16  *Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) ("[T]his rule applies
17  with equal force to the public interest.").  The Motion for Preliminary and Permanent
18  Injunctive Relief (ECF No. 3) against Defendant's use of the website www.genepalermo.com
19  is DENIED.

20  **D.  Defamation Regarding the Pamphlet**

21  Plaintiff contends that the pamphlet's title: "Palermo's Negative Sales, Scare
22  Campaign Revealed" and the statements that Plaintiff is an "unqualified shill," that "shills
23  have no independent credibility," and that messages from shills "are mere propaganda" are
24  defamatory.  Plaintiff contends that the allegedly defamatory statements were made "as part
25  of [Defendant's] concerted efforts to tarnish [Plaintiff's] reputation."   (ECF No. 3-1 at 23).
26  Plaintiff contends that the statements in the pamphlet are defamatory per se because they
27  tarnish his business reputation.

28  Defendant contends that the defamation claim fails on the grounds that the statements

in the pamphlet are "nonactionable opinions, supported by facts described in the pamphlet itself." (ECF No. 14 at 25). Defendant contends that the comments were made as part of a "spirited critique" of Palermo's presentations against fused PVC piping. *Id.* at 26. Defendant contends that the pamphlet describes the complete basis for its opinions by stating that Plaintiff is "unqualified" because he is "not a registered professional engineer and does not have a degree in engineering" and that Plaintiff is a "shill" because he is paid to give his presentations without disclosing the fact of the payment. *Id.* at 27-28. Defendant contends that "Palermo makes no effort to dispute the truth of the underlying facts published in the pamphlet." *Id.* at 28.

To state a claim for defamation, the plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado,* 72 Cal. App. 4th 637, 645 (1999). A publication "must contain a false statement of fact to give rise to liability for defamation." *Jensen v. Hewlett Packard Co.,* 14 Cal. App. 4th 958, 969-70 (1993).

"Pure opinions-'those that do not imply facts capable of being proved true or false'-are protected by the First Amendment." *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 fn. 10 (9th Cir. 1995)). However, an expression of opinion that "impl[ies] an assertion of objective fact" is not entitled to First Amendment protection from claim of defamation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.")

The Court of Appeals for the Ninth Circuit applies the following test to determine if a statement of opinion implies an assertion of fact:

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statement, the setting, and the format of the work. Next we turn to the specific context and content of the statement, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

1  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).

2        The pamphlet is titled "Palermo's Negative Sales, Scare Campaign Revealed" and states in relevant part:

> Palermo is an unqualified shill. He represents himself as a design expert, but Palermo is not a registered professional engineer and does not have a degree in engineering. Palermo was formerly the director for Plastics Pipe Institute (PPI), which advocates the use of HDPE pipe for the HDPE pipe industry. Performance Pipe paid him to submit and present the propaganda and act as its shill.
>
> A shill is defined as a person who helps another person or organization to sell goods or services without disclosing that he has a close relationship with the seller. The shill pretends to have no association with the seller/group and gives onlookers the impression that he or she is an enthusiastic independent advocate or expert. The company or group that hires the shill uses crowd psychology to encourage onlookers or audience members (who are unaware of the set-up) to purchase the sponsor's goods or services and reject those of competitors. Thus, shills have no independent credibility. Their messages are mere propaganda.

(ECF No. 1-5 at 2).

In this case, the pamphlet's title: "Palermo's Negative Sales, Scare Campaign Revealed" and the statements that Plaintiff is an "unqualified shill," that "shills have no independent credibility," and that messages from shills "are mere propaganda" are merely descriptive statement of opinion and do not allege a factual basis.

The pamphlet also contains an alleged factual basis for the statement that Plaintiff is "unqualified" and that Plaintiff is a "shill" as follows: the pamphlet asserts that Plaintiff is "unqualified" because Plaintiff is not a registered engineer and Plaintiff does not have a degree in engineering. The pamphlet asserts that Plaintiff is a "shill" because Plaintiff was paid for his endorsement of HDPE pipe. The statements are contained in an eleven page pamphlet which displays slides from Plaintiff's presentation along with commentary regarding the allegedly untrue and misleading nature of the information contained on those slides. The general tenor of the pamphlet indicates that it contains some opinions and some factual information. The reasonable reader of the pamphlet would expect to be able to verify or refute the alleged factual basis the statements that (1) Plaintiff is not a registered engineer and that Plaintiff does not have a degree in engineering and (2) Plaintiff was paid for his

1  endorsement of HDPE pipe. The statements that (1) Plaintiff is not a registered engineer and
2  that Plaintiff does not have a degree in engineering and that (2) Plaintiff was paid for his
3  endorsement of HDPE pipe are statements of fact. However, Plaintiff has not alleged that the
4  statements that Plaintiff is not a registered engineer, that Plaintiff does not have a degree in
5  engineering, and that Plaintiff was paid for his endorsement of HDPE pipe are untrue or
6  defamatory.

7  The Court finds that, at this stage in the case, Plaintiff has failed to show that he is
8  likely to succeed on the merits of his defamation claim. Plaintiff has not met his burden of
9  showing that he is entitled to the "extraordinary and drastic remedy" of a preliminary
10 injunction. *See Mazurek*, 520 U.S. at 972.

11 "When ... a party has not shown any chance of success on the merits, no further
12 determination of irreparable harm or balancing of hardships is necessary." *Global Horizons,*
13 *Inc.*, 510 F.3d at 1058 ("[T]his rule applies with equal force to the public interest."). The
14 Motion for Preliminary and Permanent Injunctive Relief (ECF No. 3) regarding the pamphlet
15 is DENIED.

16 **IV.  Conclusion**

17 IT IS HEREBY ORDERED that the Motion for Preliminary and Permanent Injunctive
18 Relief (ECF No. 3) filed by Plaintiff Gene Palermo is DENIED.

19 DATED: August 1, 2012

20  
**WILLIAM Q. HAYES**
21 United States District Judge